Now in the case of Bilinsky v. American Airlines. Mr. Valente. Good morning, Your Honor. My name is Charles Valente and I represent Plaintiff Appellant Kimberly Bilinsky. The District Court entered summary judgment in favor of the defendant, American Airlines, on Ms. Bilinsky's failure to accommodate a claim under the Americans with Disabilities Act and the Illinois Human Rights Act. In this appeal, we seek the reversal of the summary judgment and remand for trial on plaintiff's claims. The District Court held that Ms. Bilinsky failed to raise a triable issue of fact as to whether Ms. Bilinsky was a qualified individual with a disability, specifically whether she could perform the essential functions of her job. The District Court deferred to the employer, American Airlines, claim that it was an essential function of her job that her job duties be performed from the corporate headquarters in Dallas five days a week. In doing so, the District Court ignored Bilinsky's evidence that for a period of eight years she had performed her job remotely from her home in Illinois and once a week on visits to Dallas headquarters. Not only did she satisfactorily perform her job, but she did so at a high level of performance. We believe that this eight-year history was sufficient to create a triable issue of fact as to whether performing her job duties at the corporate headquarters was an essential function of the job. The District Court ignored this evidence, finding that after the merger with U.S. Airways, Ms. Bilinsky's job duties had changed, requiring her physical presence in Dallas five days a week. There was no written job description initially. There was no written job description whatsoever. Is there any contemporaneous documentation of the change in essential functions that the employer asserted? There's none on the record. I'm not aware of any, Your Honor. Any documentation indicating that the employer considered the ADA implications of requiring Ms. Bilinsky to show up in Dallas five days a week? Is Your Honor referring to after she made the request for reasonable accommodation? Yes. I don't believe there is any in the record. We believe that the District Court, by disregarding this evidence, erred here because Ms. Bilinsky's job duties never changed either before or after the merger. There's no evidence in the record as to any change. The only evidence in the record on her job duties is Ms. Bilinsky's declaration submitted in opposition to the motion for summary judgment. Notably, in the District Court, American Airlines did not dispute those job duties whatsoever. The District Court, however, did not undertake any analysis of Ms. Bilinsky's job duties and whether it was essential that those duties be performed in Dallas. Critically, the District Court never considered the impact of the merger on her specific job duties whatsoever. Instead, the District Court simply relied on Hector Adler, the employee of American Airlines, his determination that his entire department should be housed in Dallas because he thought all the employees in the department needed to communicate on short notice, because he thought that a higher degree of in-person engagement was required, and because he thought there was a need to coordinate between multiple departments. Is there a contention that these statements are pretexts? That is, that American's managers did not actually believe those things? I assume Mr. Adler believed those things. We have no contention of that. So we will take this case on the assumption that the supervisors honestly believed what they were saying. I believe Mr. Adler believed that. I think that's proper, Your Honor. I thought your position was that there's a difference between a preference and what's really essential. That's correct, Your Honor. That was certainly Mr. Adler's preference that all his employees be located in Dallas, but Mr. Adler did not make any decision with respect to Ms. Bilinsky's job duties, whether those needed to be performed in Dallas, and in fact, he didn't even know what her job duties were. And since the district court accepted Mr. Adler's decision, the district court never analyzed the job duties with respect to the merger. Mr. Valenti, let me tell you what troubles me about the case. A lot of employers will tell employees, in essence, we won't consider a work-from-home arrangement until you've been here for a year or two, or sometimes longer. It can be difficult to manage, supervise, et cetera, presents challenges, but a lot of employers are willing to try it out. I think I understand your argument that, look, this worked for eight years quite successfully with Ms. Bilinsky making a one-weekly trip to Dallas, but I'm concerned about drawing lines here and, in essence, punishing good deeds and willingness to work with employees. Can you give me any comfort on that score? Well, I think the only comfort I can give you on that, Your Honor, is it's a question of evidence. We have evidence that this worked for eight years and that she was able to perform her job duties successfully from home for eight years, and that would demonstrate that it wasn't essential that she be in Dallas to perform those duties. So when it comes to requesting a reasonable accommodation that she'd be allowed to work from home, I think that's relevant evidence. What happens when the duties change? We don't know, but we don't know because there were no change in duties here. There's no evidence in the record of any change in duties. That wasn't addressed in this case. The new employers seem to indicate that there was a change in the sense of this interaction between other employees. That's certainly what they said, Your Honor, but I think the question then was, does that mean that Ms. Belinsky is precluded from showing evidence of what took place in the last eight years? Does the jury get to consider that to determine whether what the employer is saying is that it's now essential that it be done in Dallas? Does the jury get to consider that for the last eight years she's been writing articles about flight attendance and what they've done in the community to be put on the website or in their newsletter from her home, or whether that's essential that it be done in Dallas because all of a sudden a new employer thinks that there needs to be communication on short notice? So I think that's a question for the jury. That's all we're saying. We're not saying they can't argue that it was essential. They certainly can. And we think this points up, getting to Your Honor's last question, this points up the Bratzel case, which we think the district court mistakenly relied on. In that case, there was an actual change in job duties. There was an elimination of a position. And this court said, once that job changed, you can't go to the old job and say those duties are relevant to whether it was an essential function of the new job. But we don't have that case here because the job duties are the same. There's no evidence in the record that there was any difference. Ms. Belinsky's position was not eliminated and duties were not changed at all. She presented testimony regarding where she performed her duties for the prior eight years as evidence as to whether performing those same duties five days a week in Dallas was an essential function, and the district court disregarded that. We think the district court's blind acceptance of the employer's determination of what is an essential function of a job gives free reign to employers to avoid reasonable accommodations by simply claiming that the essential function of the job changed without any change in job duties. Could you tell me how long it was from the merger until your client was notified about the accommodation needed to be rescinded? I can't tell you that. It's not in the record. But I'm not aware of it being in the record. Because a jury could reasonably rely on Ms. Belinsky's eight-year history of working from home and the nature of the job duties themselves, to find that performing those job duties in Dallas was not an essential function of the job, there was a trial with question of facts that precluded the entry of summary judgment for American Airlines. So we would ask this court to reverse and remand for trial. Thank you. Thank you, Mr. Valente. Mr. Okay. Mr. Wickham. Good morning, Honours. Labong Vijayakorn on behalf of American Airlines. We ask that this court affirm the district court's grant of summary judgment for American Airlines. We believe the operative facts here, Your Honours, is that in December 13, a major change happened in American Airlines. American Airlines merged with U.S. Airways, and American was faced with the daunting task of combining one airline, two airlines into one, two airline processes into one. This was a unique time in American's history, and what happened was a lot of chaos within American Airlines. There were myriad deadlines, there were myriad assignments, myriad problems that cropped up without advance notice, to the point where supervisors had to throw, in their words, warm bodies at a particular issue as it arose. And of course, the hub of all of this activity was at DFW, which is in Dallas-Fort Worth, American Airlines headquarters. In this all-hands-on-deck type of work environment, the vice president of the Department of Flight Services, where Ms. Bielinski worked, decided that everybody needed to be at the headquarters. It was necessary for them to be... When was that decision made after the merger? That decision, based on the record, Your Honour, the decision we have is early 2014. That is what the record shows. There is not a specific date. The plaintiff worked for, what, another year or so, right, under the work-from-home arrangement? I believe it's... So her employment ended. She was put on a leave of absence, Your Honour, early in 2015. Yes. So during that period of time, Your Honour, what American Airlines did, as soon as they made this request to continue her work-from-home arrangement, is to look at the implications of the ADA, which is what you raised earlier, Your Honour. Well, okay, maybe you can help me out here. Of course. I see Mr. Adler's conclusion that it was essential for plaintiffs to be at DFW. I see, in essence, at least solid evidence of a preference for having everybody present. But what I don't see in the evidence yet is any actual problems that were experienced with plaintiffs continuing to work in these new challenging circumstances under the prior arrangements. Strains put on others, plaintiffs shirking or not being available when called upon to throw warm bodies, as you say, at problems as they arose. Your Honour, we would submit that there are, within the record, there is testimony from four American Airlines witnesses. Did they identify? I understand everybody shared Adler's conclusion. Are there any specifics? Yes, Your Honour. I will, as an example, one of her former managers, Ms. Walensky's former manager was Linda Carlson. She testified that there were certain things that Ms. Walensky was unable to do and therefore others had to do. These included on-site activities, such as meeting with on-site experts. On-site, meaning Dallas. Meaning Dallas, yes, Your Honour. As well as various special events that occurred in hotels in the Dallas area, as well as in the flight academy within the Dallas area that Ms. Walensky was unable to attend. For example, when there needed to be equipment set up, photographs taken, which were part of what the communications team, what the department was dealing with, Ms. Walensky was simply unable to do those things. So Your Honour, there is that. She hadn't been doing them before. Before the merger, Your Honour, there is no evidence that she, on the few days that she came to Dallas, there is no evidence in the record that she did those types of things, Your Honour. Correct. So, within this post-merger environment, there was... Was there some new problem? I mean, the ADA, the point of the ADA is individualized consideration and sometimes employer preferences have to give way to enable people who can be, and in this case were, productive contributors to continue to do so. So, those specifics I asked for would seem to be matters that were the same before and after the merger. Your Honour, I do not think in the record it shows that those matters arose pre-merger, but certainly they were an issue post-merger, which is what Ms. Carlson testified to. In addition to that, Your Honour, the other witnesses also testified that there were so many assignments that cropped up that required people to be just pulled from the offices and sent to handle those various assignments in Dallas that Ms. Belinsky was unable to do. People couldn't call her? They could, Your Honour, but according to the testimony, these were certain things that could not be handled in that way. For example, Ms. Carlson also testified that it was easier to grab someone to handle something as opposed to get on the floor and explain it. I have no doubt that it's easier. That's why I'm asking about the difference between preferences and essential needs. Let me just ask, one of the other things that troubles me, counsel, I don't want to give too much weight to one word, but when the district judge says that plaintiff's evidence doesn't outweigh the defendant's evidence about the preferences for what are essential functions, that doesn't feel like summary judgment material. In your brief, you even invoke the clearly erroneous standard of review at page 8, which struck me as rather odd given the procedural posture of this case. Your Honour, if I were to address the first point which you made regarding outweighing. Again, Your Honour, I agree that we should not place too much weight on the use of that particular word. I believe what the district court was doing there was applying the clear legal standard here, which is that there is a presumption that the employer's judgment on essential functions is correct unless the employee is able to provide and the operator languages sufficient evidence to the contrary. I believe that in using the word outweigh, the judge was simply applying that presumption. When it did apply the presumption, what it did was it looked at the four American Airlines witnesses that testified consistently as to the essential nature of her being. Everybody's on the same page. I get that at the high level of generality. I'd be shocked if the evidence were otherwise. But what troubles me is the absence of a written job description, of a change in written job description, of contemporaneous documentation, of problems, and really even of individualized consideration as to whether Mr. Adler's overall preference to have everybody at Dallas five days a week really went to the essentials of this particular plaintiff's job. Understood, Your Honour. With regard to the individualized consideration you had asked earlier where there was any sort of an individualized consideration within the record, I would point to A354 through 60 in the record where the record shows that when Ms. Belinsky made her reasonable accommodation request, there were lots of conversations that happened between her and her and human resources as well as the managers. The American's medical director was involved, Dr. Aton. He consulted with a neurologist who was an expert in multiple sclerosis in the Dallas area. He also consulted with Ms. Belinsky's own doctor, Dr. Cohen, who by the way allowed, who by the way in his written submission never said that she could not work in Texas. So are you disputing the need? That seems to be an entirely different basis for this decision. Understood, Your Honour. It's helpful to know that you've pointed me to an interesting part of the record. Of course, Your Honour, yes. I'm only speaking with regard to the fact that there is a record that an individualized consideration was made. Your Honour, with regard to the clearly erroneous standard which you raised, the reason why we have added that is because we understand that this court has held in Church v. General Motors that we have reviewed for clear error grants of summary judgment where the court is solely applying a clear legal standard to a set of undisputed facts. What is that case? That is Church v. General Motors. It's a Seventh Circuit case from 1996. It's 74 F. 3rd, 795. That particular case, the clearly erroneous standard started with Judge Posner's decision in Central States v. Slotkey. And since then, I understand that there's been some resistance in this court against that particular standard. However, even though this court has been given the opportunity multiple times, this court has not actually reversed that decision. So we believe that that decision is still good law. I gather there is still no written job description. That is correct, Your Honour. I see that my time is up. We will stand on our brief and simply ask this court respectfully to affirm the district court's grant of summary judgment. Thank you very much. Mr. Valente. Thank you, Your Honour. In brief, Ms. Carlson testified that she never asked Ms. Balinski to assist her in Dallas. There were no specifics identified except for this one conference for a few days at some point during the one year when Ms. Balinski functioned after the merger, functioned by working from home and then in Dallas one day a week. There was nothing in her job description of her duties, which they did not dispute, that referred to helping out at conferences or any of these other items. They never amended her job to include those. They never gave her a new job description or anything of that nature. We just have a question of fact as to what really essentially, what were the essentials of her job? Was it essential that she be in Dallas? The only final point is, counsel raised this case. I didn't quite catch it, Church v. General Motors. I know they didn't raise that in the briefs. I don't think it's proper to raise it here in argument. We believe that there was sufficient evidence for a reasonable jury to consider that a reasonable jury might rule in favor of the plaintiffs in finding that it was not an essential function of her job that she perform her duties in Dallas. That was for the jury to consider, not for the district court to either weigh or disregard. Accordingly, we request that this court reverse and remand this matter to the district court for trial. Thank you. Thank you very much, counsel. The case is taken under advisement.